COURT OF APPEALS
DECISION
DATED AND FILED

September 7, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** 2021AP1696
2021AP1697
2021AP1698

Cir. Ct. Nos. 2020FO335
2020FO336
2020FO337

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

NO. 2021AP1696

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JEFFREY S. WEIN,

DEFENDANT-APPELLANT.

NO. 2021AP1697

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JEFFREY S. WEIN,

**DEFENDANT-APPELLANT.**

---

NO. 2021AP1698

IN THE MATTER OF THE REFUSAL OF JEFFREY S. WEIN:

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

JEFFREY S. WEIN,

    DEFENDANT-APPELLANT.

---

APPEALS from judgments of the circuit court for Waukesha County: JENNIFER DOROW, Judge. *Affirmed.*

¶1 GUNDRUM, P.J.[1] Jeffrey S. Wein appeals from judgments of conviction for unlawfully failing to comply with federal boat lighting requirements, operating a boat while intoxicated, and refusing to submit to a breath alcohol test. He contends the trial court erred in finding him guilty of each offense because the evidence did not support the court's finding that he had operated the boat. For the following reasons, we disagree and affirm.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(g) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

## *Background*

¶2    Wein does not dispute that he was under the influence of an intoxicant when his boat was stopped by wardens.  As he states in his appellate brief, "the sole issue" in this appeal is "was there clear, convincing, and satisfactory evidence to find that Mr. Wein operated the motorboat?"  We conclude that there was.

¶3    The trial in this case was held before the trial court without a jury, and the relevant evidence from that trial is as follows.

¶4    A Wisconsin Department of Natural Resources Conservation Warden Supervisor, Andrew Starch, testified that part of his training was in the proper use of a flashlight at nighttime "to illuminate the operator of the boat so we can identify who the operator is at the time of [a] stop" and agreed that this included "situations where there are multiple people on board."  He added that "our main goal [is] to identify the operator of the boat."

¶5    On July 17, 2020, at approximately 10:15 p.m., Starch was in a patrol boat with another warden, Mitchell Groenier, looking for boating violations. They observed a pontoon boat operating in a channel at slow speed with its docking lights illuminated.  Determining this to be a law violation, the wardens decided to stop the boat.  Starch shined his "LED high luminescent flashlight," which is "very bright," on the boat and "observed [Wein] in the captain's chair of the boat, as well as numerous other occupants on the boat."  Starch told Wein "[t]hat the boat needed to be put in neutral," and then the wardens came up to the operator side of the boat, making contact with the occupants.

¶6      Starch testified that he never lost sight of nor moved his flashlight away from the area of the captain's chair.  Wein was the first person Starch communicated with because "he was the operator and later found out he was the registered owner."  Approaching the boat, Starch detected a strong odor of alcohol coming from the boat generally, and when he spoke with Wein, Starch specifically identified that odor as also coming from him.

¶7      Starch expressed that while he never observed Wein with his hands on the steering wheel, "when somebody's in that [captain's] chair, it's not possible for someone else to operate the boat."  Starch did not recall ever seeing anyone else on the boat reaching over and handling the steering wheel.  Starch further testified that when he was later on the way to the "boat shed" with Wein for "Intoximeter testing," Wein "repeated numerous times … that he wasn't a threat to anyone or the public because *he was driving his boat* at such a slow speed in the channel, and he wasn't threatening anyone." (Emphasis added.)

¶8      Warden Groenier testified next.  He drove the boat he and Starch were on as they approached Wein's boat.  After Starch illuminated Wein's boat with his flashlight, Groenier turned on the emergency lights to execute the stop and moved the patrol boat alongside Wein's boat.  Groenier held the two boats together while Starch focused on the investigation.  Groenier did observe that the same person who was in the captain's chair when Starch initially illuminated the boat remained in that chair throughout the investigation.  Groenier identified that person as Wein.

¶9      Several witnesses testified for Wein.  A friend of Wein's, Karl Rekowski, testified that at the time the wardens performed the stop, he (Rekowski) was the one driving Wein's boat and that Wein was at the front of the

boat talking with his wife.  Rekowski stated that he was driving the boat "so that [Wein] could ask [his wife] … if we should go to the Hideaway or … go home." He confirmed that Wein had "determined that he could not talk to [his wife] *while driving the boat* … [b]ecause she was sitting in the front of the boat" and *the person* "*driving the boat* cannot talk to someone in the front of the boat" because "[i]t was loud.  We had music on."  (Emphasis added.)  So, Rekowski "agreed to drive the boat."

¶10     Another friend of Wein's testified that he was on the boat that night and that Rekowski, not Wein, was driving Wein's boat at the time of the stop. This witness acknowledged that despite observing the wardens conduct an OWI investigation of Wein, he did not indicate to the wardens that Wein had not been the one operating the boat.  He testified to consuming alcoholic beverages both prior to and during his time on the boat that evening.

¶11     Three additional witnesses testified that they were on the boat with Wein at the time the wardens performed the stop and that Rekowski was driving the boat at that time.  Without providing specifics, one of the witnesses confirmed that either he or someone else "ma[d]e the wardens … aware that they had the wrong person."  Another witness indicated that as the wardens pulled away from Wein's boat with Wein, this witness and others "yell[ed] across the water" to the wardens that they "had the wrong guy" and that Wein "wasn't driving the boat." All three of the witnesses testified to drinking alcoholic beverages prior to being stopped by the wardens, with one admitting to consuming "probably 12 to 16" such beverages.

¶12     Wein's wife also testified that Rekowski was driving the boat when the wardens made contact and that she and Wein were talking at the time.

¶13    Wein himself testified he was not driving his boat at the time the wardens made contact but was in the front of the boat talking with his wife while Rekowski drove the boat.  Wein did acknowledge driving the boat earlier, but stated that he "was not driving the boat *in that channel when they pulled us over*, no.  I was up in the front talking to my wife."  (Emphasis added.)

¶14    Following the presentation of evidence, the trial court credited the wardens' testimony that Wein was in the operator's chair—"the captain's chair"—as the boat was in motion and at the time they made contact with his boat.  The court further pointed to an audio recording that was played at trial, in which, as the court paraphrased it, Wein stated to the wardens, "[W]ell, what are the options here?  I'm not a criminal.  Why can't my wife just operate the boat?"  The court found those to be "statements … of a guilty conscience.  They coincide with what this warden testified to about you putting that motorboat into neutral."  The court found that Wein was "clearly" in the captain's chair operating the boat when the wardens made contact.  The court specifically believed the testimony of Starch "over the testimony of people who had been drinking that day to varying degrees."  It found Starch's testimony and Wein's statements on the recording "to be the most reliable evidence."  The court found that the State had met its burden of proof by clear, convincing and satisfactory evidence that Wein was "the operator of the motorboat and that at the time that you operated the motorboat, you were" intoxicated.

¶15    Wein appeals.

***Discussion***

¶16    Because Wein stipulated that he was intoxicated at the time the wardens made contact, the State was only required to prove by clear, satisfactory,

and convincing evidence that Wein had operated his boat while in that intoxicated condition. *See* WIS. STAT. § 345.45. It proved this.

¶17 On a challenge to the sufficiency of the evidence, we "may not reverse a conviction unless the evidence, viewed most favorably to the state and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found" that the appropriate burden of proof had been met. *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990).

¶18 We will not upset a trial court's findings of fact unless they are clearly erroneous. WIS. STAT. § 805.17(2). As we have stated,

> "[i]t is well settled that the weight of the testimony and the credibility of the witnesses are matters peculiarly within the province of the trial court acting as the trier of fact" because the trial court has a superior opportunity "to observe the demeanor of witnesses and to gauge the persuasiveness of their testimony."

*Tang v. C.A.R.S. Prot. Plus, Inc.*, 2007 WI App 134, ¶19, 301 Wis. 2d 752, 734 N.W.2d 169 (alteration in original; citations omitted). It is also for the trial court, not this court, "to resolve conflicts in the testimony, and we review the evidence in the light most favorable to the findings made by the trial court." *Id.* (citation omitted). When more than one inference can reasonably be drawn from the evidence, the inference which supports the trier of fact's verdict must be the one followed on review unless the evidence is incredible as a matter of law. *Id.* Whether the evidence presented at trial ultimately is sufficient to support the conviction is a question of law we review de novo. *State v. Booker*, 2006 WI 79, ¶12, 292 Wis. 2d 43, 717 N.W.2d 676. On appeal, however, we are directed to

7

look to the record for evidence supporting the verdict. *See Poellinger*, 153 Wis. 2d at 501.

¶19 As noted, we heavily defer to the trial court's credibility determinations and weight given to evidence. Here, the court clearly believed and credited Starch's testimony that Wein was in the operator's seat as the boat was moving and the wardens made contact with it, i.e., that Wein was operating the boat at that time. Furthermore, with the court finding Starch a believable witness, we note his unrefuted testimony that as he was taking Wein to the boat shed, Wein "repeated numerous times … that he wasn't a threat to anyone or the public because *he was driving his boat* at such a slow speed in the channel, and he wasn't threatening anyone." (Emphasis added.) The court's finding that Wein was operating the boat is certainly supported by the evidence.

¶20 Furthermore, even if the trial court had credited Rekowski's testimony, a reasonable inference from that testimony is that Wein was operating the boat just moments before the wardens turned on their lights—meaning Wein was operating it in the same intoxicated condition but just had exited the captain's chair moments before contact with the wardens.

¶21 Rekowski testified that when the wardens turned on their emergency lights, Wein was at the front of the boat talking with his wife. Rekowski stated that the reason why he (Rekowski) was driving the boat at the time the wardens made contact "was so that [Wein] could ask [his wife] … if we should go to the Hideaway or … go home." Rekowski confirmed that Wein had "determined that he could not talk to [his wife] *while driving the boat* … [b]ecause she was sitting in the front of the boat" and whoever is driving the boat "cannot talk to someone in the front of the boat" because "[i]t was loud. We had music on." Because of

8

this, at that time, Rekowski "agreed to drive the boat." The only reasonable inference from this testimony is that Wein had been operating the boat just moments before the wardens made contact but that Rekowski took over operating so that Wein could go up to the front of the boat to speak with his wife. Again, this can only mean that Wein was operating the boat while in the same intoxicated state as observed through the investigation. Furthermore, this view of the evidence is completely consistent with Wein's own testimony at trial, in which he stated that he "was not driving the boat *in that channel when they pulled us over*, no. I was up front talking to my wife." (Emphasis added.)

¶22 But, we need not even concern ourselves with this reasonable inference from Rekowski's (and Wein's) testimony. Considering the evidence in the light most favorable to the State and the conviction, as we must, the evidence that Starch (and Groenier) observed Wein in the captain's chair as the boat was being operated is all that is necessary. But, more than that, Wein made inculpatory statements "repeat[ing] numerous times … that he wasn't a threat to anyone or the public because *he was driving his boat* at such a slow speed in the channel." (Emphasis added.) The court found Starch's testimony credible, and that testimony carries the day. Additionally, the trial court correctly noted that Wein's recorded statement to the wardens—"[W]ell, what are the options here? I'm not a criminal. Why can't my wife just operate the boat?"—indicated his consciousness of his guilt.

¶23 Wein bears the burden on appeal to convince us the trial court erred. *See **Gaethke v. Pozder***, 2017 WI App 38, ¶36, 376 Wis. 2d 448, 899 N.W.2d 381. He has not met this burden.

*By the Court.*—Judgments affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.